UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

|  |  |  |
|---|---|---|
| In re: | : | |
|  | : | Chapter 11 |
| Michael Calise, | : | Case No. 98-50649 |
|  | : | |
| Debtor. | : | |

*Appearances*:

| | | |
|---|---|---|
| Julie A. Manning, Esq. | : | Attorney for Movant, |
| SHIPMAN & GOODWIN LLP | : | B & M Investments, LLC[1] |
| One Constitution Plaza | : | |
| Hartford, CT | : | |
| | | |
| Stephen P. Wright, Esq. | : | Attorney for Debtor |
| HARLOW, ADAMS & FRIEDMEN | : | |
| 300 Bic Drive | : | |
| Milford, CT | : | |

Alan H. W. Shiff, United States Bankruptcy Judge:

**MEMORANDUM AND ORDER
ON B & M INVESTMENTS, LLC's MOTION TO COMPEL**

B&M Investments, LLC ("B&M") filed this Motion to Compel the Debtor to pay its secured claim as required by this court's August 18, 2006 order determining that B&M was the holder of a secured claim in the amount of $1,631,000 (doc. #530) and its August 18, 2006 order confirming the Debtor's Second Amended Plan (doc. #531)

---

[1] The Movant was originally represented by Attorney Thomas L. Kanasky, Jr. On January 27, 2010, in conjunction with Movant B&M's Motion to Reopen Case, Attorney Manning filed a Notice of Appearance "in lieu of the appearance of Thomas L. Kanasky, Jr." (Notice of Appearance (doc. #580).)

(collectively, the "Plan Orders").  For the reasons that follow, the Motion to Compel is granted.

## *BACKGROUND*

While the court assumes familiarity with the underlying facts and procedural history of this case, which was commenced over twelve years ago, a brief background is provided for textural clarification.[2]

The Debtor filed for Chapter 11 bankruptcy protection on April 9, 1998.  On August 3, 2000, B&M, holder of a claim secured by a mortgage on the Debtor's property, moved for relief from the automatic stay to continue a state court foreclosure action.  On November 29, 2000, the parties agreed to the entry of a stipulated order under which the automatic stay would continue and the Debtor would make monthly 'adequate protection' payments to B&M in the amount of $10,000 and pay post-petition real property taxes until confirmation of a plan or dismissal of the case.

On March 7, 2002, the Second Circuit Court of Appeals decided in *In re Canney*, 284 F.3d 362 (2d Cir. 2002), that, *inter alia*, Code § 108 rather than § 362 governed the tolling of a period of equitable redemption following entry of judgment in a Vermont strict foreclosure action.  On April 11, 2002 and in reliance on *Canney*, B&M renewed its motion for relief from stay notwithstanding its consent to the stipulated order extending the automatic stay.  The motion was denied by an August 13, 2003 order which concluded that *Canney* was not implicated, *res judicata* applied, and B&M was bound by the stipulated order.  *In re Calise*, 297 B.R. 363 (Bankr. D. Conn. 2003).  That order was affirmed by the district court.  *In re Calise*, No. 3:03-cv1631 (DJS), Order (D. Conn. June 13, 2005).

---

[2] The court' draws from the parties' "Stipulation of Facts and Exhibits" dated April 20, 2010 ("Stipulation") (doc. #599), as well as the decisions of the district and circuit courts.  *See In re Calise*, No. 3:06 CV 1499 (CFD), 2008 WL 4829843, at *1-2 (D. Conn. Nov. 4, 2008) ("*Calise I*"); *In re Calise*, 354 Fed. App'x 510 (2d Cir. 2009) ("*Calise II*").

On August 2, 2000, the Debtor filed a motion pursuant to Code § 506(a) to determine the secured status of B&M's claim.[3]  A hearing on that motion and the Debtor's second amended plan as modified ("the "Plan") was scheduled for a August 15, 2006 hearing.[4]  On August 18, 2006, the Plan Orders entered, granting the motion and confirming the Debtor's Plan over B&M's objections.  A final decree[5] entered on October 4, 2007.

On August 23, 2006, B&M appealed the Plan Orders.  On October 4, 2006 and again on October 19, 2006, *i.e.*, during the pendency of the appeal, the Debtor tendered a check to B&M for $1,631,000, the full extent of its obligation to B&M under the Plan.  See Stipulation, ¶13.  B&M returned both checks.[6]  See *id.*, ¶¶ 15-16.

The Plan Orders were affirmed by the district court.  See *Calise I*, 2008 WL 4829843.  On further appeal, the Second Circuit also affirmed.  See *Calise II*, 354 Fed. App'x 510.  No further appeal was taken.

---

[3]  Debtor's Motion was styled as a "Motion to Determine Status of Claims Secured by Liens combined with Motion to Determine the Value of Claims Secured by Liens."  (*See* doc. #224.)

[4]  On July 20, 2006, the Debtor filed a motion for an order seeking, *inter alia*, a determination that his second amended disclosure statement was adequate for modification.  (See doc. #485.)  That motion was granted at the August 15, 2006 hearing.

[5]  "After an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case."  Fed. R. Bankr. P. 3022.

[6]  It is noted that the district court and the circuit court referenced the tender and return of the checks..  See *Calise I*, 2008 WL 4829843, at *3 ("On the Plan's Effective Date, Calise tendered a check to B&M for $1.6 million, the extent of its obligations to B&M under the plan. B&M has not cashed the check."); *Calise II*, 354 Fed. App'x at 512 (same)*; see also* Stipulation, Part II, "Facts Advanced Solely by Debtor", ¶ 1 ("Both the District Court and the United States Court of Appeals for the Second Circuit found that on the Effective Date the Debtor tendered a check for the full extent of its obligation to B&M." (citation omitted)).

On December 11, 2009, B&M demanded payment from the Debtor in the full amount of its claim in accordance with the Plan Orders. On December 22, 2009, via letter, the Debtor objected, contending that B&M had waived its right under Article XVI, § 16.1 of the Plan to receive a distribution (hereinafter, the "December 22 Letter"). *See* Stipulation, ¶¶ 21-22. That objection prompted the instant Motion to Compel.

## *DISCUSSION*

The Debtor isolates one section of the confirmed Plan to support his claim that B&M waived its right to a distribution when it chose to appeal rather than accept the October 2006 tendered distributions. That is, since B&M appealed and lost, the Debtor does not have to pay B&M under the Plan Orders. The logic is flawed. The Debtor opposed the appeals, and, having succeeded, attempts to violate the Plan Orders that are the product of his success. The fallacy is compounded by the plain language of the Plan.

> [A] confirmed plan holds the status of a binding contract as between the debtor and its creditors. As with any contract, the starting point for review of a plan is its plain language. Unless some ambiguity is to be found within the plan itself, the [c]ourt has no basis to look beyond its text.

*In re Victory Mkts., Inc.*, 221 B.R. 298, 303 (2d Cir. B.A.P. 1998) (citations omitted); *see also Adelphia Recovery Trust v. Bank of America, N.A.*, 390 B.R. 80, 88 (S.D.N.Y. 2008) (quoting *In re Victory Mkts.*); *In re Scott Cable Commc'ns, Inc.*, 227 B.R. 596, 603 n.9 (Bankr. D. Conn. 1998) (same). The court finds the language of the Plan is unambiguous.[7]

---

[7] Under Article XII of the Plan, the court retains jurisdiction to interpret the Plan. *See* Plan, Art. XII, § 12.1(e) (doc. #528); *see also id.* at § (d) (retaining jurisdiction "to determine any and all controversies and dispute[s] arising under or related to the Plan"), and § (*l*) (retaining jurisdiction "to determine such other matters as may be provided for in the Confirmation Order, consistent with the Plan . . . and authorized under the provisions of [the] Bankruptcy code and Bankruptcy Rules").

The parties stipulate that the following provisions of the Plan are applicable:

>**Article I**, ¶ 15.  "**Effective Date**" – shall mean . . . the date on which the plan shall be subsequently consummated in accordance with the applicable provisions of this Plan, which date unless the Debtor elects an earlier date, shall be the first Business Day following the thirtieth (30th) after the Confirmation Order becomes a **Final Order** or as promptly and practicable thereafter.
>
>\* \* \*
>
>**Article I**, ¶ 19.  "**Final Order**" – ten days after entry of an Order (excluding the date the order is entered) which has not been stayed or as to which Order the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or hearing is pending.
>
>\* \* \*
>
>**Article IV, ¶ 4.8.  CLASS 8 – The Secured Claim of B&M Investments, LLC ("B&M").**  The Debtor shall pay this Allowed Claim in full on the Effective Date at which time the lien of B&M on the Debtors [*sic*] property shall be satisfied and shall thereafter be of no force and effect.
>
>\* \* \*
>
>**Article XVI, § 16.1 – Unclaimed Distributions.**  Holders of Allowed Claims which do not cause their distribution checks to be timely presented for payment shall be deemed to have waived their right to such distributions and shall not participate in any distributions under the Plan pursuant to § 1143 of the Bankruptcy code.  The proceeds of checks issued to the holders of Allowed Claims shall be deemed unclaimed property pursuant to § 347(b) of the Bankruptcy Code at the expiration of six (6) months from the date the first unpaid distribution check is mailed unless such holder requests payment from the Debtor in writing within said six (6) month period.  The funds resulting from such unclaimed property shall revert to the Debtor and such holder shall be barred from making any claim against the Debtor or any person authorized by the Debtor to make said distribution.

As noted, the Debtor bases his refusal to pay B&M's secured claim on Article XVI, § 16.1 of the Plan, on the rationale that since B&M refused payment in October 2006, it "has waived its right to the distribution, and it is barred from making any claim against the Debtor." December 22 Letter at 2.  But obviously §16.1 is only relevant if a distribution is made in compliance with the Plan.  Thus, the threshold question is

whether the Debtor's October 2006 payments were tendered in accordance with the Plan. They were not.

The Plan provided that the Debtor was required to pay B&M's allowed claim in full "on the Effective Date". Plan, Art. IV, §4.8 ("CLASS 8 – The Secured Claim of B&M Investments, LLC"). "Effective Date" is a defined term meaning "the first Business Day following the thirtieth (30th) *after the Confirmation Order becomes a Final Order* . . ." *See id.* at Art. I, ¶ 15 (emphasis added). In turn, "Final Order" is defined in the Plan, in relevant part, as "ten days after entry of an Order . . . as to which no appeal or petition for review or hearing is pending." Thus, before the Effective Date can be established, it is necessary to determine whether, as to B&M, the Plan Orders are final.

It is undisputed that B&M timely appealed the Plan Orders to the district court and then, after those orders were affirmed, to the Second Circuit. As noted, on November 30, 2009, the Second Circuit issued a summary order affirming the Plan Orders. B&M did not seek further appellate review. *See supra* p. 3. Hence, in accordance with the plain language of the Plan, the Plan Orders did not become "Final Orders" until December 11, 2009, *i.e.*, ten days after entry of the Second Circuit's summary orders finally resolving B&M's pending appeal. *See* Plan, Art. I, ¶ 19. With that calculus, the Effective Date is January 11, 2010, the first Business Day following the 30th day after the Plan Orders became final.[8] The Debtor should have paid B&M $1,631,000 on that date. *See* Plan, Art. IV, § 4.8. However, the Debtor has not yet made that distribution. Thus, Plan § 16.1 has not yet been triggered.

---

[8] Thirty days after December 11, 2009 is January 10, 2010, a Sunday. The first Business Day (as that term is defined in the Plan) after January 10, 2010, is January 11, 2010, a Monday.

### *CONCLUSION*

Accordingly, B&M's Motion to Compel is granted. The Debtor is directed to pay B&M $1,631,000 in accordance with the Plan Orders, and

**IT IS SO ORDERED.**

Dated this 18th day of June 2010 at Bridgeport, Connecticut.

Alan H. W. Shiff
United States Bankruptcy Judge